**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**GREGORY THOMPSON, JR.**                    **CIVIL ACTION**


**VERSUS**                                        **NO. 20-454-BAJ-SDJ**


**UOP, LLC**

---

**ORDER**

Before the Court is a Motion to Compel (R. Doc. 12) filed by Plaintiff on February 1, 2021. Defendant, UOP, LLC (Defendant), filed an Opposition (R. Doc. 13), to which Plaintiff filed a Reply (R. Doc. 16). The Court has reviewed the parties' filings and the applicable law, and, as explained below, Plaintiff's Motion to Compel (R. Doc. 12) is **GRANTED in part**.

**I.      BACKGROUND**

In this action, Plaintiff alleges that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, by subjecting him to a hostile work environment, retaliation, and ultimately termination, because of his race (African American). *See* 42 U.S.C. § 2000e-2(a)(1) (prohibiting discrimination based on race); 42 U.S.C. § 2000e-3(a) (prohibiting retaliation). Beyond the specific instances of discrimination allegedly directed at Plaintiff, the Complaint also describes a workplace whose culture is allegedly permeated with racial animosity towards African Americans. (R. Doc. 1). With that in mind, Plaintiff requested information during discovery "regarding company data on discipline, wages [and] racial makeup." (R. Doc. 12-2 at 6) (categorizing the information sought in Interrogatory Nos. 11, 12, and 13). According to Plaintiff, the information and data requested in Interrogatory Nos. 11, 12, and 13 is important because, when it comes to allegations of racial harassment and retaliation, "context matters." (R. Doc. 16 at 1).

Plaintiff also "s[ought] the salaries of [Defendant's] frontline supervisors to estimate his front pay damages," through Interrogatory No. 10. (R. Doc. 12-2 at 9) (summarizing the information sought in Interrogatory No. 10). Defendant refused to provide any of the requested information.

## II.    APPLICABLE LAW

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Whether discovery is proportional depends on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information may fall within this scope of discovery even if it is not admissible in evidence. Fed. R. Civ. P. 26(b)(1).

## III.    DISCUSSION

In Interrogatory Nos. 11, 12, and 13, Plaintiff requested background information "regarding company data on discipline, wages [and] racial makeup." (R. Doc. 12-2 at 6). Plaintiff also "s[ought] the salaries of [Defendant's] frontline supervisors to estimate his front pay damages," through Interrogatory No. 10. (R. Doc. 12-2 at 9) (summarizing the information sought in Interrogatory No. 10). The Court will consider Interrogatory Nos. 11, 12, and 13, before turning to Interrogatory No. 10.

### A.    Discovery of Background Information

Interrogatory Nos. 11, 12, and 13 ask Defendant to provide the following background information.

**Interrogatory No. 11:**

Have you filed or maintained any of the documents listed below for the period from January 2015 to the present for the UOP facility in Baton Rouge? State which documents you have filed or maintained.

    (a)    EEO-1 reports;

    (b)    Documents pursuant to federal Executive Order 11246;

    (c)    Reports filed with the OFCC of the US Dept Labor;

    (d)    Compliance Review Reports (CRR);

    (e)    Documents required under Federal Uniform Guidelines on Employee Selection Procedures, 29 C.F.R. § 1607.

**Interrogatory No. 12:**
Please provide employee identification number, race, salary or hourly wage, gross income per year, hiring date, separation date if any, separation reason, and position title for employees for years 2016, 2017, 2018 and 2019 in the UOP operations and maintenance departments in Baton Rouge.

**Interrogatory No. 13:**
Please provide a list of all written disciplinary actions UOP made against its employees at its Baton Rouge facility from January 1, 2016 to December 31, 2019. Describe the disciplinary violation, an employee identification number, the race of each employee, and the discipline made against each employee.

According to Plaintiff, "context matters" and is crucial to understanding his claims of racial harassment, retaliation, and termination. (R. Doc. 16 at 1). Discrimination and "harassment cannot be measured in isolation." (R. Doc. 16 at 1). To fully "understand those claims, an examination of the widespread discrimination," as alleged in the Complaint, "is necessary to provide background and understanding to [Plaintiff's] three claims." (R. Doc. 12-2 at 6).

Specifically, Plaintiff claims that minorities at UOP occupied lower-level positions with access to less-desirable facilities (R. Doc. 1 at 3), were subject to stricter rules and harsher discipline (R. Doc. 1 at 3), and were terminated more frequently (R. Doc. 1 at 3). The Complaint also describes racist comments made in the workplace. (R. Doc. 1 at 12) ("Guillott . . . told co-workers . . . of growing up with Ku Klux Klan rallies and the hatred those in his hometown . . . had towards African Americans."); (R. Doc. 1 at 12) ("Guillot had spoken of pulling a gun on a Black person who came up to his truck."); (R. Doc. 1 at 4) ("Hancock told a co-worker . . . that he

hated one color—black. He then turned around and sneered at [Plaintiff].”); (R. Doc. 1 at 5) (Barbour joked that on his recent hunting vacation “he and his hunting buddy had hunted and killed two little Black boys.”); (R. Doc. 1 at 5-6) (Barbour “had spoken of pulling a gun on a Black man who had cut in front of him . . . and also of pulling a gun on a Black man who was outside his apartment . . . .”). Interrogatory Nos. 11, 12, and 13 are therefore aimed at information concerning broader racial discrimination at UOP and the racial makeup of the workforce, including any disparity in job titles, tenure, pay, and discipline.

Defendant generally objects to the production of this information because “Plaintiff makes no allegation that he specifically suffered disparate treatment because of his race . . . thus he is not entitled to broad corporate information about the hiring, firing, disciplining, pay scale, promotions, terminations, or race of every single Baton Rouge-based UOP employee . . . .” (R. Doc. 13 at 2, 3).[1] The Court disagrees.

“[T]he ‘disparate treatment’ (or ‘intentional discrimination’) provision” of Title VII makes it unlawful for an employer to “discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race,” among other things. *E.E.O.C. v. Abercrombie & Fitch Stores, Inc*., 575 U.S. 768, 771 (2015). “‘Disparate treatment’ . . . is the most easily understood type of discrimination,” and it has been clearly alleged by Plaintiff, who claims to have

---

[1] Defendant also objects that Plaintiff seeks private information regarding its employees. However, the Court notes that Plaintiff has been careful not to request the names of any employees—only statistical data regarding the workforce. For that reason, the Court finds this objection unfounded. Defendant further objects to Interrogatory Nos. 12 and 13 as overly burdensome. However, this conclusory objection carries little weight where Defendant has made no effort to inform the Court of the number of employees working in either the operations or maintenance departments of its Baton Rouge facility.

Finally, Defendant objects to Interrogatory No. 11, as requiring proprietary business information. However, this Court has previously ordered production of the same information. *See Moore v. Shaw Grp., Inc*., 2015 WL 4939880, at *4 (M.D. La. Aug. 18, 2015) (order production of EEO-1 Reports between 2008 and 2014; “The court finds that the 2008 and 2014 reports are relevant with regard to determining the racial makeup of Shaw's employees before and after the Plaintiffs were hired and fired.”). Moreover, any proprietary concerns may be addressed either by the current Protective Order (R. Doc. 11), or a motion seeking to amend that Protective Order.

been discharged and harassed because of his race. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). Therefore, Defendant is not correct in arguing that Plaintiff is not entitled to the information being sought because has not alleged disparate treatment. Nor does the Court accept Defendant's position that background information—i.e., information regarding racial hostility or the racial makeup of the workforce—is irrelevant.

"When a plaintiff must prove intentional discrimination, a district court can abuse its discretion by limiting a plaintiff's ability to show the 'atmosphere' in which the plaintiff 'operated.'" *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 358 (5th Cir. 1995). Indeed, courts have long recognized the importance of background information in cases of employment discrimination, including those by a single plaintiff alleging disparate treatment. *See Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 307 (1977) ("statistics can be an important source of proof in employment discrimination cases"); *Shattuck v. Kinetic Concepts, Inc.*, 49 F.3d 1106, 1109–10 (5th Cir.1995) (recognizing the relevance of evidence of discrimination against other individuals in the plaintiff's protected class); *Langley v. Int'l Bus. Machines Corp.*, 2019 WL 11626423, at *5 (W.D. Tex. Dec. 23, 2019) ("Pattern or practice evidence can be relevant to the pretext inquiry of the McDonnell Douglas framework" applied to individual disparate treatment claims); *Crain v. Metro. Sec. Servs., Inc.*, 2019 WL 4453701, at *5 (S.D. Miss. Sept. 17, 2019) ("Evidence of long-lasting and gross disparity between the composition of a work force and that of the general population thus may be significant even though there is no requirement that the work force mirror the general population."); *Ratliff v. Governor's Highway Safety Program*, 791 F.2d 394, 402 (5th Cir. 1986) (An employer's past discriminatory policy and practice may well illustrate that the employer's asserted reasons for disparate treatment are a pretext for intentional discrimination."); *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 477–78 (5th Cir.1989) (holding, in

the context of sex discrimination, that harassment of women other than the plaintiff is relevant to a hostile work environment claim).

The Court therefore finds the information requested in Interrogatory Nos. 11, 12, and 13 to be relevant and generally within the scope of discovery. However, the Court does agree with Defendants' objection as to the period of requested information. As written, the Interrogatories request information dating back to either 2015 or 2016 and going as far forward as the present. Because Plaintiff has alleged that the discriminatory conduct began in 2017, the Court will temporally limit the information requested in Interrogatory Nos. 11, 12, and 13 to information between January 1, 2017, and December 31, 2019 (the year of Plaintiff's termination). The Court will additionally limit the scope of Interrogatory No. 13 to disciplinary actions UOP made against employees in the operations and maintenance departments in Baton Rouge. This limitation is consistent with the scope of Interrogatory No. 12, as well as Plaintiff's Complaint, which specifically references the racial disparities between the operations and maintenance departments in Baton Rouge. And so,

**IT IS ORDERED** that Plaintiff's Motion to Compel (R. Doc. 12) is **partially GRANTED** to the extent Plaintiff seeks responses to **Interrogatory Nos. 11, 12, and 13**, but the scope of those requests is **temporally limited** to information between **2017** and **2019**. The **scope** of **Interrogatory No. 13** is additionally **limited** to employees in the **operations** and **maintenance** departments in Baton Rouge. Defendant must provide **responses** within **14 days** of this Order.

### B.   Discoverability of Frontline Supervisor Salaries

In Interrogatory No. 10, Plaintiff "seeks the salaries of [Defendant's] frontline supervisors to estimate his front pay damages". (R. Doc. 12-2 at 9).

**Interrogatory No. 10:**
Please state the yearly income for each frontline supervisor at UOP in Baton Rouge in 2019 and 2020 and the number of years that employee had worked at UOP.

(R. Doc. 12-2 at 3). Defendant objects to the relevancy of this information, arguing Plaintiff has not alleged that Defendant failed to promote him to the position of frontline supervisor. Plaintiff, however, explains that the information is "essential in estimating [Plaintiff's] . . . front pay." (R. Doc. 12-2 at 3).

"Front pay is a remedy for the post-judgment effects of discrimination. It is a form of equitable relief and is . . . remuneration for the plaintiff's lost income from the date of judgment to the date the plaintiff obtains the position he would have occupied but for the discrimination." *Overman v. City of East Baton Rouge*, 132 F. Supp. 3d 753, 761 (M.D. La. 2015). In assessing awards of front pay, courts have considered, among other things, "any potential increase in salary through regular promotions." *McInnis v. Fairfield Communities*, Inc., 458 F.3d 1129, 1146 (10th Cir. 2006) (also considering "work life expectancy, salary and benefits at the time of termination . . . the reasonable availability of other work opportunities, the period within which the plaintiff may become re-employed with reasonable efforts . . . "). Therefore, the relevance of this information is not foreclosed by Plaintiff's failure to allege that he applied for an open frontline supervisor position but was denied. Instead, the Court finds this information falls within the scope of discovery as Plaintiff claims he had "some likelihood—had he not been fired—of [eventually] being promoted to the frontline supervisor position." (R. Doc. 12-2 at 3). Evidence of this potential increase in Plaintiff's salary, had he not been terminated, is therefore within the scope of discovery.

Defendant also objected to this request "to the extent it requires revealing third party confidential or private information." (R. Doc. 12-2 at 3). However, based on Plaintiff's representations, Defendant appeared more willing to provide "the range of pay for a frontline

supervisor position." (R. Doc. 12-2 at 3) ("Again, if you want the range of pay for a frontline supervisor position, you should have asked."). The Court finds the alternative proposed by Defendant to be reasonable. Plaintiff however does not address Defendant's proposal in his Motion to Compel, much less suggest that the alternative is inadequate. (R. Doc. 12-2). Therefore,

**IT IS ORDERED** that Plaintiff's Motion to Compel is **GRANTED in part** as to **Interrogatory No. 10** and Defendant must respond within **14 days** of this Order by providing Plaintiff with the "range of pay for a frontline supervisor position" at its Baton Rouge facility between 2019 and 2020.

### C.    Request for Production No. 7

Finally, at the very end of his Motion to Compel, Plaintiff asks the Court to additionally compel Defendant's response to Request for Production No. 7. (R. Doc. 12-2 at 9). According to Plaintiff, "[t]his is a general request that seeks those documents collected or consulted in responding to Interrogatory Nos. 10-13." (R. Doc. 12-2 at 9). However, the actual language of Request for Production No. 7, is as follows:

> **Request for Production No. 7:**
> Please produce any and all documents that you collected or consulted, in whole or part, in formulating the facts and/or opinions for these requests for production.

(R. Doc. 12-3 at 5). The actual Request for Production says nothing about the documents consulted in responding to Plaintiff's Interrogatories. The Court cannot order Defendant to respond to a discovery request that was never formally made by Plaintiff. For that reason,

**IT IS ORDERED** that Plaintiff's Motion to Compel is **DENIED** as to **Request for Production No. 7**.

Signed in Baton Rouge, Louisiana, on April 28, 2021.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**